## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Power House Tool, Inc., an Illinois corporation,<br><br>And<br><br>JNT Technical Services, Inc. a New Jersey Corporation,<br><br>      Plaintiffs,<br>  vs.<br><br>Thermal Technologies, Inc. an Oklahoma Corporation,<br><br>And<br><br>Xtreme Bolting Services, Inc. an Oklahoma Corporation<br><br>      Defendants. | Case No.<br>    FILED: JUNE 24, 2008     LI<br>    08CV3611<br>    JUDGE   MANNING<br>    MAGISTRATE  JUDGE BROWN<br><br>   **COMPLAINT** |

Now come the Plaintiffs Power House Tool, Inc. and JNT Technical Services, Inc. and hereby allege as follows:

1.  Power House Tool, Inc. (POWER HOUSE TOOL) is a corporation of the State of Illinois with its principal place of business at 626 Nicholson Street, Joliet, Illinois 60435.

2.  JNT Technical Services, Inc. (JNT) is a corporation of the State of New Jersey with its principal place of business at 85 Industrial Avenue, Little Ferry, New Jersey 07643.

3.  Thermal Technologies, Inc. (THERMAL TECHNOLOGIES) is a corporation of the State of Oklahoma with its principal place of business at 500 S. Lynn

Riggs, PMS 125, Claremore, OK 74107 and a "Chicago Regional Office located at 1944 N. Griffith Blvd., Suite F, Griffith, IN 46319.

4.     Xtreme Bolting Services, Inc. (XTREME BOLTING) is a corporation of the State of Oklahoma with its principal place of business at 500 S. Lynn Riggs, PMS 125, Claremore, OK 74107.

5.     This is a complaint for patent infringement arising under the patent laws of the United States of America and specifically under 35 USC § 1 et seq, unfair competition under Illinois state law and false advertising unfair competition under 15 USC 1125(a). This Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. §1400(b) in that THERMAL TECHNOLOGIES and XTREME BOLTING both conduct business in this district and are subject to personal jurisdiction in this district.

## BACKGROUND

7.     On or about late 2004 to early 2005, Mike Kelly, Glenn Jorgensen and Laura Patterson invented and developed a heater controller for controlling multiple resistance heaters.

8.     On March 8, 2005 a patent application entitled "Resistance Heating System" was filed with the United States Patent and Trademark Office (USPTO) for the heater controller invention, which application was assigned Serial Number 11/074,507. Ownership of the patent application was transferred by the inventors to POWER HOUSE TOOL and JNT with assignments recorded at the USPTO at Reel and Frame numbers 016366/0950 and 016368-0530.

9.     On November 28, 2006 the USPTO duly and legally issued the patent application as U.S. Patent No. 7,141,766 (the '766 patent), a copy of which is attached as **Exhibit A** hereto.   This patent is currently owned jointly by POWER HOUSE TOOL and JNT.

10.     POWER HOUSE TOOL and JNT have manufactured a heater controller embodying the principles of the inventions covered by the '766 patent for controlling multiple resistance heaters.

11.     In order to sell and distribute the heater controllers, POWER HOUSE TOOL and JNT utilize distributors and representatives.

12.     On or around February 2, 2005, Tim Decker of THERMAL TECHNOLOGIES traveled to POWER HOUSE TOOL's facility in this district to discuss a distributorship agreement whereby THERMAL TECHNOLOGIES would act as a distributor for the heater controller.  On or around March 2, 2005, Tim Decker, Thomas Decker and Steve Mitcheltree, all of THERMAL TECHNOLOGIES made a second visit to the facilities of POWER HOUSE TOOL in this district to further discuss the distributor agreement.

13.     In connection with those meetings and discussions with POWER HOUSE TOOL and JNT, THERMAL TECHNOLOGIES was provided with a heater controller embodying the principles of the inventions claimed in the '766 patent.  Portions of the equipment were returned to POWER HOUSE TOOL by hand delivery made by Steve Mitcheltree to POWER HOUSE TOOL's facility in this district.

14.     While the heater controller was in the possession or control of THERMAL TECHNOLOGIES, the housing of the heater controller was breached to expose the inner

workings of the heater controller, and subsequently THERMAL TECHNOLOGIES returned the heater controller to POWER HOUSE TOOL and JNT.

15.     Following the return of the heater controller in its breached condition, counsel for POWER HOUSE TOOL and JNT wrote a letter dated March 8, 2005, informing THERMAL TECHNOLOGIES of the pendency of a patent application on the heater controller and seeking assurance from THERMAL TECHNOLOGIES that the trade secret rights and technology of the POWER HOUSE TOOL and JNT heater controller would not be improperly used by THERMAL TECHNOLOGIES. (**Exhibit B**)

16.     Thomas Decker wrote a letter in return dated March 11, 2005, stating that THERMAL TECHNOLOGIES would respect POWER HOUSE TOOL and JNT's patent rights. (**Exhibit C**)

17.     Thereafter, THERMAL TECHNOLOGIES and XTREME BOLTING displayed a heater controller at the Power-Gen International Trade Show in November, 2006.  At the trade show, THERMAL TECHNOLOGIES and XTREME BOLTING distributed a brochure describing their heater controller. (**Exhibit D**)

18.     The brochure distributed by THERMAL TECHNOLOGIES and XTREME BOLTING shows and describes a heater controller that is similar in many respects to the heater controller that THERMAL TECHNOLOGIES obtained from POWER HOUSE TOOL and JNT.

19.     The brochure states that the heater controller is "endorsed by TXU & AEP power companies."

20.     The shared web site of THERMAL TECHNOLOGIES and XTREME BOLTING indicates that the heater controller is patented, and at least implies that the

heater controller is patented by THERMAL TECHNOLOGIES and XTREME BOLTING. **(Exhibit E)**

21.    In fact, the only issued US patent covering the heater controller manufactured, used and sold by THERMAL TECHNOLOGIES and XTREME BOLTING is the '766 patent owned by POWER HOUSE TOOL and JNT.

22.    On December 11, 2006, counsel for POWER HOUSE TOOL and JNT wrote to TXU Corp. advising them of potential infringement of the '766 patent. **(Exhibit F)**

23.    Subsequently counsel for POWER HOUSE TOOL and JNT inquired further about the "endorsement" of the THERMAL TECHNOLOGIES and XTREME BOLTING heater controller, and were informed by TXU Corp. that TXU did not provide any such "endorsement." **(Exhibit G)**

24.    On January 31, 2007, counsel for POWER HOUSE TOOL and JNT sent a cease and desist letter to Mr. Thomas Decker of THERMAL TECHNOLOGIES. **(Exhibit H)**

25.    Mr. Decker did not respond to the January 31 letter, and on March 8, 2007 a second copy of the letter was faxed to Mr. Decker. **(Exhibit I)**

26.    Mr. Decker did not respond to the March 8, 2007 fax, and on July 25, 2007, a further reminder was sent to Mr. Decker. **(Exhibit J)**

27.    In response to the further reminder, a letter dated July 25, 2007 was sent to counsel for POWER HOUSE TOOL and JNT by counsel for THERMAL TECHNOLOGIES and XTREME BOLTING, claiming complete ignorance about the matter, but nevertheless denying that an infringement was occurring. **(Exhibit K)**

28.     In response to the letter, on July 25, 2007 counsel for POWER HOUSE
TOOL and JNT sent yet another copy of the January 31, 2007 letter to counsel for
THERMAL TECHNOLOGIES and XTREME BOLTING. (**Exhibit L**)

29.     A letter of denial, with no explanation for the denial, was sent by counsel
for THERMAL TECHNOLOGIES and XTREME BOLTING dated July 30, 2007.
**(Exhibit M)**

30.     A further letter seeking information regarding the construction of the
THERMAL TECHNOLOGIES and XTREME BOLTING heater controller was sent by
counsel for POWER HOUSE TOOL and JNT on August 20, 2007. **(Exhibit N)**

31.     After receiving no response to the August 20, 2007 letter, and after noting
that THERMAL TECHNOLOGIES and XTREME BOLTING displayed a heater
controller at the 2007 Power Gen show, a further letter dated February 1, 2008 was sent
to counsel for THERMAL TECHNOLOGIES and XTREME BOLTING (**Exhibit O**)
again seeking information regarding the basis for the denial of infringement.

32.     A terse response was faxed from counsel for THERMAL
TECHNOLOGIES and XTREME BOLTING dated February 4, 2008. **(Exhibit P)**

33.     After no further response supporting the terse response was received,
counsel for POWER HOUSE TOOL and JNT telephoned counsel for THERMAL
TECHNOLOGIES and XTREME BOLTING, in June 2008, again seeking additional
information regarding the structure of the THERMAL TECHNOLOGIES and XTREME
BOLTING heater controller and the basis for the denial of infringement by THERMAL
TECHNOLOGIES and XTREME BOLTING.  No information was provided by counsel
for THERMAL TECHNOLOGIES and XTREME BOLTING, other than an assertion

that an unpublished patent application was pending for the heater controller manufactured

by THERMAL TECHNOLOGIES and XTREME BOLTING.  A copy of the patent

application was requested, but that request was denied.

### Count I:  Patent Infringement

34.    POWER HOUSE TOOL and JNT repeat and reallege the allegations

contained in paragraphs 1-33 above.

35.    On information and belief, THERMAL TECHNOLOGIES and XTREME

BOLTING have been and are now infringing, actively inducing infringement of, and

contributing to the infringement of at least claims 16, 17, 19 and 20 of the '766 patent by

offering for sale, selling and using one or more XTREME BOLTING machines, and will

continue to do so unless enjoined by this Court.

36.    The machine being provided by THERMAL TECHNOLOGIES and/or

XTREME BOLTING appears on a web site that is shared by both THERMAL

TECHNOLOGIES and XTREME BOLTING.

37.    On information and belief, the machine being provided by THERMAL

TECHNOLOGIES and XTREME BOLTING comprises a resistance heating system.

38.    On information and belief, the machine being provided by THERMAL

TECHNOLOGIES and XTREME BOLTING comprises a controller configured to be

connected to a source of alternating current electricity.

39.    On information and belief, the machine being provided by THERMAL

TECHNOLOGIES and XTREME BOLTING comprises a controller having a plurality of

cable plug receptacles.

40.     On information and belief, the machine being provided by THERMAL
TECHNOLOGIES and XTREME BOLTING comprises a plurality of electricity
conducting cables each having a cable plug at one end configured to be received in said
receptacles and having a resistance heater provided at an opposite end.

41.     On information and belief, the machine being provided by THERMAL
TECHNOLOGIES and XTREME BOLTING comprises a timer associated with each
receptacle.

42.     On information and belief, the machine being provided by THERMAL
TECHNOLOGIES and XTREME BOLTING comprises an input arrangement for a user
to input a selected time into said timers.

43.     On information and belief, the machine being provided by THERMAL
TECHNOLOGIES and XTREME BOLTING comprises a visual indicator arranged to
display a status of each of said receptacles.

44.     On information and belief, the machine being provided by THERMAL
TECHNOLOGIES and XTREME BOLTING comprises a portable frame that the
controller is mounted on.

45.     On information and belief, the machine being provided by THERMAL
TECHNOLOGIES and XTREME BOLTING is to be connected to a source of alternating
current electricity comprising 480 volt, 3 phase alternating current electricity.

46.     On information and belief, the machine being provided by THERMAL
TECHNOLOGIES and XTREME BOLTING comprises a bolt heater as the resistance
heater.

47.     The infringing activities of THERMAL TECHNOLOGIES and XTREME BOLTING complained of herein have caused direct and immediate harm, damage and loss to POWER HOUSE TOOL and JNT and will continue to do so unless enjoined by order of this Court.

48.     The loss and harm to POWER HOUSE TOOL and JNT caused by the activities of THERMAL TECHNOLOGIES and XTREME BOLTING complained of herein is irreparable and not capable of being fully compensated for by THERMAL TECHNOLOGIES and XTREME BOLTING, said loss and harm including, inter alia, loss of sales, profits, burden allocation, incremental profits, customer relationships, user relationships, reputation and the rights of exclusivity granted by the United States Patent Laws.

49.     THERMAL TECHNOLOGIES and XTREME BOLTING have had actual knowledge of the '766 patent since at least December, 2006 by means of a series of letters and other communications concerning the '766 patent directed to THERMAL TECHNOLOGIES and their counsel.

50.     The acts of THERMAL TECHNOLOGIES and XTREME BOLTING herein complained of constitute willful acts and intentional infringement of POWER HOUSE TOOL and JNT's patent rights.

### Count II:  Unfair Competition

51.     POWER HOUSE TOOL and JNT repeat and reallege the allegations contained in paragraphs 1-33 above.

52.     THERMAL TECHNOLOGIES and XTREME BOLTING's false advertising of endorsements by TXU and AEP constitutes unfair competition under state

law, resulting in loss of revenue to POWER HOUSE TOOL and JNT and improperly gained revenues for THERMAL TECHNOLOGIES and XTREME BOLTING.

**Count III:  False Advertising Unfair Competition under 15 USC 1125(a)**

53.    POWER HOUSE TOOL and JNT repeat and reallege the allegations contained in paragraphs 1-33 above.

54.    The advertising statements that the heater controller or other products and services of THERMAL TECHNOLOGIES and XTREME BOLTING are endorsed by TXU and AEP are false.

55.    The advertising statements indicating that the heater controller of THERMAL TECHNOLOGIES and XTREME BOLTING is patented by THERMAL TECHNOLOGIES and XTREME BOLTING are false in violation of 35 USC 292.

56.    THERMAL TECHNOLOGIES and XTREME BOLTING's false advertising of endorsements by TXU and AEP and false statements of patenting of the heater controller by THERMAL TECHNOLOGIES and XTREME BOLTING has resulted in loss of revenue to POWER HOUSE TOOL and JNT and improperly gained revenues for THERMAL TECHNOLOGIES and XTREME BOLTING.

Prayer For Relief

WHEREFORE, POWER HOUSE TOOL and JNT pray that this Court:

A.    Grant judgment to POWER HOUSE TOOL and JNT and against THERMAL TECHNOLOGIES and XTREME BOLTING decreeing that THERMAL TECHNOLOGIES and XTREME BOLTING have infringed, contributed to the infringement of and/or induced infringement of United States Letters Patent 7,141,766.

B.    Enter judgment and decree that THERMAL TECHNOLOGIES and XTREME BOLTING's infringement of United States Letters Patent 7,141,766 was willful.

C.    Enter judgment and decree that this is an exceptional case within the meaning of 35 U.S.C. §285.

D.    Preliminarily enjoin THERMAL TECHNOLOGIES and XTREME BOLTING and their customers from continuing acts of infringement of United States Letters Patent 7,141,766 during the pendency of this action or until further order of this Court.

E.    Permanently enjoin THERMAL TECHNOLOGIES and XTREME BOLTING and their officers, agents and employees and those in privity with them or acting in concert with them, including their customers, from committing acts of infringement of United States Letters Patent 7,141,766.

F.    Order THERMAL TECHNOLOGIES and XTREME BOLTING to deliver up to the Court for destruction all devices constituting an infringement of United States Letters Patent 7,141,766.

G.    Determine POWER HOUSE TOOL and JNT's damages caused by THERMAL TECHNOLOGIES and XTREME BOLTING's acts of infringement and enter judgment against THERMAL TECHNOLOGIES and XTREME BOLTING, and

award POWER HOUSE TOOL and JNT the amount of said damages as measured by 35 USC § 284.

H.    Enter judgment against THERMAL TECHNOLOGIES and XTREME BOLTING for an increased amount of damages up to three times the amount of POWER HOUSE TOOL and JNT's damages determined as provided for by 35 USC § 285.

I.    Award POWER HOUSE TOOL and JNT pre-judgment and post-judgment interest on the amount of damages determined by the Court including any multiple thereof imposed by the Court.

J.    Award POWER HOUSE TOOL and JNT their costs and attorneys' fees as provided for in 35 USC § 285.

K.    Assess a fine against THERMAL TECHNOLOGIES and XTREME BOLTING as provided for in 35 USC § 292, and provide one half of the fine to POWER HOUSE TOOL and JNT as provided for in the statute.

L.    Enter judgment against THERMAL TECHNOLOGIES and XTREME BOLTING in an amount to compensate POWER HOUSE TOOL and JNT for the unfair competition by THERMAL TECHNOLOGIES and XTREME BOLTING.

M.    Enter judgment against THERMAL TECHNOLOGIES and XTREME BOLTING in an amount to compensate POWER HOUSE TOOL and JNT for the false advertising by THERMAL TECHNOLOGIES and XTREME BOLTING, including an award of Defendants' profits, damages sustained by the Plaintiffs and the costs of the action and an increase of the actual damages found, up to three times that amount, according to the circumstances of this case. 15 USC § 1117.

N.     Find that this is an exceptional case, and award Plaintiffs their attorneys

fees pursuant to 15 USC § 1117.

O.     Grant such other and further relief as the Court shall deem appropriate.


Respectfully submitted,

Power House Tool, Inc.
JNT Technical Services, Inc.



By:     /Kevin W. Guynn
        One of their attorneys

Kevin W. Guynn (ARDC No. 03124379)
Greer, Burns & Crain, LTD.
Suite 2500
300 South Wacker Drive
Chicago, Illinois 60606
(312) 360-0080
June 24, 2008

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH





US007141766B2

(12) **United States Patent**
Jorgensen et al.

(10) Patent No.: **US 7,141,766 B2**
(45) Date of Patent: **Nov. 28, 2006**

(54) **RESISTANCE HEATING SYSTEM**

(75) Inventors: **Glenn F. Jorgensen**, Ridgewood, NJ (US); **Michael W. Kelly**, Joliet, IL (US); **Laura Patterson**, Joliet, IL (US)

(73) Assignees: **JNT Technical Services, Inc.**, Little Ferry, NJ (US); **Power House Tool**, Joliet, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **11/074,507**

(22) Filed: **Mar. 8, 2005**

(65) **Prior Publication Data**

US 2006/0201929 A1    Sep. 14, 2006

(51) Int. Cl.
*H05B 1/02* (2006.01)

(52) **U.S. Cl.** ...................... **219/497**; 219/205; 219/492; 219/506; 219/483

(58) **Field of Classification Search** ................ 219/490, 219/494, 483–486, 202, 205, 497, 505, 492, 219/506, 533, 535
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,176,601 A    10/1939    Bates
3,771,209 A    11/1973    Bennett, Jr.

| | | | | | |
|---|---|---|---|---|---|
| 4,454,084 A | * | 6/1984 | Smith et al. | ............... | 264/40.1 |
| 4,847,468 A | * | 7/1989 | Hufstetler | ................... | 219/203 |
| 5,196,673 A | * | 3/1993 | Tanis | .......................... | 219/205 |
| 5,397,876 A | | 3/1995 | Shimamoto et al. | | |
| 6,018,137 A | * | 1/2000 | Reiff | .......................... | 219/205 |
| 6,348,674 B1 | * | 2/2002 | Russell | ...................... | 219/243 |

FOREIGN PATENT DOCUMENTS

JP    361297039 A  *  12/1986

* cited by examiner

*Primary Examiner*—Mark Paschall
(74) *Attorney, Agent, or Firm*—Greer Burns & Crain

(57) **ABSTRACT**

A resistance heating system is provided which includes a resistance heater, a source of alternating current electricity connected by conductors to the resistance heater, and a controller comprising a timer arranged to connect the source of alternating current electricity to the resistance heater for a selected time period and to disconnect the source from the resistance following the selected time period. In an embodiment, the resistance heating system is provided with a controller configured to be connected to a source of alternating current electricity and having a plurality of cable plug receptacles arranged to receive electricity. An electricity conducting cable having a cable plug at one end is configured to be received in the receptacles and has a resistance heater provided at an opposite end. A master timer may be connected with a communication arrangement to the controller. The master timer is arranged to control an electric output of a plurality of the receptacles.

**26 Claims, 6 Drawing Sheets**



EXHIBIT
A

**U.S. Patent**          Nov. 28, 2006          Sheet 1 of 6          US 7,141,766 B2

## *FIG. 1*



## FIG. 2



## *FIG. 3*





FIG. 4



*FIG. 5*

*FIG. 6*

Case 1:08-cv-03611    Document 1-2    Filed 06/24/2008    Page 8 of 13

*FIG. 7*



*FIG. 8*



US 7,141,766 B2

1

## RESISTANCE HEATING SYSTEM

### BACKGROUND OF THE INVENTION

The present invention relates to heating devices and controllers therefore, and in particular to a resistance heating device and its controller for heating a rod or post, such as a stud or threaded bolt.

The present invention has a particular application in the heating of studs or bolts, such as the bolts of a steam turbine casing. Although the invention is not limited to such an application, the invention will be described in such an environment and use.

It is desirable to heat the bolts used in a steam turbine casing during the fastening and unfastening thereof in that the bolt will elongate due to expansion during heating, allowing the nut to be threaded onto the bolt to a greater degree during the fastening process. When the bolt cools and shrinks, the nut is pulled tighter against the surrounding surface, thus assuring a secure fasting of the nut on the bolt and a clamping of the parts held together by the nut and bolt. In order to ease the removal of the nut from the bolt, such as during the servicing of the turbine, it is helpful to again heat the bolt to elongate it, in order to move the nut away from the surrounding surface, or at least to lessen the force holding the nut against that surface.

It has long been known to heat bolts, for example see U.S. Pat. No. 2,176,601, and to use induction heating to heat such bolts, for example, see U.S. Pat. Nos. 3,771,209 and 5,397, 876.

Commonly available resistance type bolt heaters operate at 240 volts, and are individually controlled (on-off). These bolt heaters generally provide a heating power of about 50 watts per square inch. With the bolt heaters powered and controlled individually and with the given heating power output, the heating of a bolt used in a typical turbine requires generally 5 to 10 minutes or more of heating to elongate the bolt sufficiently to provide the necessary tightening or loosening of the bolt.

It would be an advance in the art if there were provided an easy to use resistance heating device and a method for heating multiple items, such as bolts.

### SUMMARY OF THE INVENTION

The present invention provides a resistance heating system which can be utilized in a wide variety of environments, however, one environment of express utility is for use with bolt heaters in power plants.

The resistance heating system includes a resistance heater, a source of alternating current electricity connected by conductors to the resistance heater, and a controller comprising a timer arranged to connect the source of alternating current electricity to the resistance heater for a selected time period and to disconnect the source from the resistance following the selected time period.

In an embodiment, the timer includes an input arrangement for a user to input a selected time into the timer.

In an embodiment, the resistance heater comprises a bolt heater.

In an embodiment, the bolt heater includes a visual indicator to indicate when electrical current is being supplied to the bolt heater.

In an embodiment, an adapter sheath is arranged to effectively increase a diameter of the bolt heater.

In an embodiment, the source of alternating current electricity provides 480 volt electricity.

2

In an embodiment, the controller comprises a plurality of timers for controlling electricity flow to a plurality of resistance heaters simultaneously.

In an embodiment, the controller includes a visual indicator for displaying a status of the timer.

In an embodiment, the controller is mounted on a portable frame.

In an embodiment, the resistance heater is connected to the controller via a cable and a plug/receptacle interface.

In an embodiment, a resistance heating system is provided which comprises a controller configured to be connected to a source of alternating current electricity and having a plurality of cable plug receptacles arranged to receive electricity. An electricity conducting cable having a cable plug at one end is configured to be received in the receptacles and has a resistance heater provided at an opposite end. A master timer may be connected with a communication arrangement to the controller. The master timer is arranged to control an electric output of a plurality of the receptacles.

In an embodiment, the receptacles may each be controlled by a separate timer.

In an embodiment, a single master switch controls electricity flow to each of the receptacles.

In an embodiment, the controller includes a user operable selection switch to enable the timer controller on the cable to control the electric output of the at least one other of the receptacles.

In an embodiment, a resistance heating system is provided which comprises a controller configured to be connected to a source of alternating current electricity and having a plurality of cable plug receptacles. An electricity conducting cable having a cable plug at one end is configured to be received in the receptacles and has a resistance heater provided at an opposite end. A timer is associated with each receptacle. An input arrangement is provided for a user to input a selected time into said timers, and a visual indicator is arranged to display a status of each of the receptacles.

### BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a side elevational view of a resistance heating system embodying the principles of the present invention.

FIG. 2 is an enlarged partial view of a receptacle and timer area of the controller of FIG. 1.

FIG. 3 is an enlarged end perspective view of a remote master timer for the resistance heating system of FIG. 1.

FIG. 4 is an electrical schematic of the resistance heating system embodying the principles of the present invention.

FIG. 5 is a side perspective view of an alternative embodiment of a resistance heating system embodying the principles of the present invention.

FIG. 6 is an enlarged partial view of a receptacle and timer area of the controller of FIG. 5.

FIG. 7 is a side perspective view of a bolt heater resistance heating device and an adaptor sleeve.

FIG. 8 is an enlarged partial view of the bolt heater junction box with the handle and visual indicator.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention, as illustrated in the FIGs., provides a resistance heating system 20 which can be utilized in a wide variety of environments. One particular environment of express utility is for use with bolt heaters used, for example, in power plants, however, the invention is not

US 7,141,766 B2

3

limited to such an embodiment, but rather the invention is described herein referencing such an embodiment.

As illustrated in FIG. 1, the resistance heating system 20 includes a resistance heater 22, a source of alternating current electricity 24 connected by conductors 26 to the resistance heater, and a controller 28 including a timer 30 arranged to connect the source of alternating current electricity to the resistance heater for a selected time period and to disconnect the source from the resistance following the selected time period.

The resistance heater 22 may be a bolt heater, such as illustrated in FIG. 1. In such an embodiment, the bolt heater 22 is provided with a handle 32 to allow for manual grasping of the bolt heater by a user, and includes a cylindrical metal portion 34 sized to be inserted into an axial hole or bore in a bolt or stud, to heat the bolt in the tightening or loosening operation, such as described in U.S. Pat. No. 5,994,682, the disclosure of which is incorporated herein by reference. One or more adaptor sheaths 35 (FIG. 7) may be provided to allow a single sized cylindrical metal portion 34 of the bolt heater 22 to be used for a variety of different sized bores in bolts or studs. The adaptor sheath 35 should have an internal diameter with a close tolerance with the outer diameter of the cylindrical metal portion of the bolt heater 22, and an external diameter with a close tolerance with the inner diameter of the bore of bolt or stud. Also, the adapter sheath 35 should be made of a thermal conducting material such as metal, for example, stainless steel, such that the heat generated by the bolt heater 35 would be transmitted through the sheath by conduction to the surrounding metal of the bolt or stud. Appropriate arrangements may be provided to permit the adaptor sheath 35 to be removed from the bore either in conjunction with or separately from the removal of the cylindrical metal portion 34 of the bolt heater 22.

The controller 28 is configured to be connected to a source of alternating current electricity, such as 480 volt three phase alternating current electricity. Other voltages of electricity, as well as single phase electricity, may be provided, however 480 volt three phase alternating current electricity is available at most industrial and power plant sites, and allows for a more rapid heating of the studs with the resistance heater 22.

The controller 28 may be mounted on a portable frame 36 carried on casters or wheels 38 to allow the controller to be moved closely to a location where the controller is to be utilized, such as in a power plant. The controller 28 is provided with internal components, including transformers, circuit breakers and wiring which are arranged to deliver electricity to a plurality of cable plug receptacles 40 provided on one or more panels 42 of the controller.

The conductors 26 are provided in the form of an electricity conducting cable having a cable plug 44 at one end which is configured to be received in the receptacles 40. For example, the cable plug 44 may be of the twist-lock type, to mate with a twist-lock receptacle 40 to provide a positive lock for the interface between the cable 26 and the controller 28. The cable 26 has the resistance heater 22 provided at the end opposite the cable plug 44.

The resistance heater 22 may be provide with a connection or junction box 46 at which the conductors 26 can be connected to the resistance element of the resistance heater. The junction box 46 may be provided with a visual indicator 47 (FIG. 8) such as an LED powered by means of a current transformer, such as a ferrite donut shaped core, providing an induced current from one of the conductors 26 to energize the visual indicator. In this manner high voltage lamps or voltage transformers are not required for the visual indicator.

4

The visual indicator may be positioned directly adjacent to the handle 32 so as to alert a user that the resistance heater 22 is energized, in which case, it should not be removed from the bore or hole, in order to prevent an overheating, and potential damage to the resistance heater.

In operation, the cylindrical metal portion 34 of the bolt heater 22 is to be inserted into a preformed bore in a threaded stud portion of a bolt, with close tolerances between the metal portion and the bore. The bolt heater 22 is energized and the resistance heater increases the temperature of the stud, causing the stud to elongate. A threaded nut is then tightened onto the stud, and the bolt heater is deenergized and removed, allowing the stud to cool and shrink, longitudinally, thereby increasing the holding force of the nut on the stud. To remove the nut from the stud, the reverse process is employed.

In order to provide the necessary heating for the stud, the present invention utilizes the timer 30 to energize the resistance heater 22 for a predetermined time period. The timer 30 may include an input arrangement 48 (FIG. 2), such as a rotary switch, a toggle switch, a rocker switch, a keypad or number pad or other well known input devices for a user to input a selected time into the timer. The timer 30 may also include a display 47, such as an LCD or other type of display to indicate the status and amount of time remaining on the timer. Each timer 30 may also be provided with a start/stop switch 49 used to start or stop the countdown of the timer, and thus the provision of electricity to the receptacle 40 while the timer is counting down the remaining time.

Typically a separate timer 30 is provided for each receptacle 40, so that the electricity provided at each receptacle is provided by the separate and dedicated timer, and several receptacles may be provided with electricity simultaneously, if their timers are running concurrently. A visual indicator, such as an incandescent bulb or LED or other similar visual indicator 50 may be provided adjacent to each timer 30 or receptacle 40 for displaying a status of the timer or receptacle, such as that a particular receptacle is energized with electricity.

A selector switch 52 may be provided adjacent to each receptacle 40 with several modes of operation selectable by a user. One position 52a of the selector switch 52 may be "off" which will prevent any electricity from being supplied to the associated receptacle 40, despite the condition of the timer 30. Another position 52b of the selector switch 52 may be "hand" or "manual" in which case, the receptacle 40 would be supplied continuously with electricity, despite the condition of the timer 30. This mode would be useful in determining the length of time required to satisfactorily heat an object, such as a stud, with the resistance heater 22. Following this determination, the now known length of time could be input into the timers 30 to heat other similar objects to the required degree. Thus, another position 52c of the selector switch 52 may be "automatic" in which case the receptacle 40 would be supplied with electricity only so long as its controlling timer was supplied with a non-zero length of time.

A separate timing circuit may be utilized to measure a period of time following the termination of energization of the resistance heater 22 to allow for a cool down period for the resistance heater. A visual indicator 56 may be provided for the user to indicate when the resistance heater 22 may have sufficiently cooled so as to allow for safe removal and handling of the resistance heater following termination of energization of the heater. For example, a red light may illuminate during the period that a receptacle is energized, and for a period, such as a minute, following the deenergi-

US 7,141,766 B2

5

zation of the receptacle. At that point, the red light may be extinguished and a green light may be illuminated.

The present invention also allows for a master operation wherein a plurality of receptacles 40 may be controlled by a single timer in the form of a master timer 60 (FIG. 3). The master timer 60 may be mounted directly on the panel 42 of the controller 28 or may carried on a remote pendent 62. The provision of a remote pendant 62 will allow a user to control the heating operation while at a position close to the resistance heater 22, rather than being at the controller 28. The remote pendant 62 may be connected by a communication path, such as a cable 64 and a receptacle 65 or a wireless communication arrangement, to the controller 28 as shown in the electrical schematic of FIG. 4. The master timer 60 may be used to provide an alternate path for electricity from the source of current to the various receptacles 40, when the selector switches 52 are positioned in the automatic mode position. The remote pendent 62 may be provided with the master timer 60, as well as a display 66 for the master timer, a start/stop switch 68 for the master timer, an input arrangement 70 for the master timer, and indicator lights 72, 74, all as described above with respect to similar components provided in association with each of the receptacle dedicated timers 30.

By using the master timer 60, the user may simultaneously control a plurality of the receptacles 40, and thus energize a plurality of the resistance heaters 22 simultaneously, thereby reducing the length of time required to heat a plurality of studs, for example. In a power plant environment, this time savings will help to greatly reduce the length of time a particular electricity generating device may be out of service for repair or maintenance.

In the illustrated embodiment, an electricity conducting cable 64 having a cable plug at one end is configured to be received in the receptacle 65 at the controller 28 and has the master timer 60 located at an opposite end of the cable. The master timer 60, when connected, controls an electric output of a plurality of receptacles 40, so long as their associated selector switches 52, if they are provided with such switches, are positioned in the automatic position 52c.

FIGS. 5 and 6 illustrate an alternative embodiment of the present invention. In these FIGs., there is illustrated a resistance heating system 120 comprising a source of alternating current electricity 124 which may be connected by conductors 26 to the resistance heater 22 as illustrated in FIG. 1. A controller 128 comprising a 130 timer is arranged to connect the source of alternating current electricity 124 to the resistance heater 22 for a selected time period and to disconnect the source from the resistance following the selected time period. The controller 128 is configured to be connected to a source of alternating current electricity, such as 480 volt three phase alternating current electricity.

The controller 128 may be mounted on a portable frame 136 carried on casters or wheels 138 to allow the controller to be moved closely to a location where the controller is to be utilized, such as in a power plant. In this embodiment, the portable frame 136 is in the form of a hand truck or dolly with two wheels 138. The controller 128 is provided with internal components, including transformers, circuit breakers and wiring which are arranged to deliver electricity to a plurality of cable plug receptacles 140 provided on one or more panels 142 of the controller.

In order to provide the necessary heating for the stud, this embodiment utilizes the timer 130 to energize the resistance heater 22 for a predetermined time period. The timer 130 may include an input arrangement 148 (FIG. 6), such as a rotary switch, a toggle switch, a rocker switch, a keypad or

6

number pad or other well known input devices for a user to input a selected time into the timer. The timer 130 may also include a display 147, such as an LCD or other type of display to indicate the status and amount of time remaining on the timer. Each timer 130 may also be provided with a start/stop switch 149 used to start or stop the countdown of the timer, and thus the provision of electricity to the receptacle 140 while the timer is counting down the remaining time.

Typically a separate timer 130 is provided for each receptacle 140, so that the electricity provided at each receptacle is provided by the separate and dedicated timer, and several receptacles may be provided with electricity simultaneously, if their timers are running concurrently. A visual indicator, such as an incandescent bulb or LED or other similar visual indicator 150 may be provided adjacent to each timer 130 or receptacle 140 for displaying a status of the timer or receptacle, such as that a particular receptacle is energized with electricity.

A selector switch 152 may be provided adjacent to each receptacle 140 with several modes of operation selectable by a user. One position of the selector switch 152 may be "off" which will prevent any electricity from being supplied to the associated receptacle 140, despite the condition of the timer 130. Another position of the selector switch 152 may be "hand" or "manual" in which case, the receptacle 140 would be supplied continuously with electricity, despite the condition of the timer 130. This mode would be useful in determining the length of time required to satisfactorily heat an object, such as a stud, with the resistance heater 22. Following this determination, the now known length of time could be input into the timers 130 to heat other similar objects to the required degree. Thus, another position of the selector switch 152 may be "automatic" in which case the receptacle 140 would be supplied with electricity only so long as its controlling timer was supplied with a non-zero length of time.

A separate timing circuit may be utilized to measure a period of time following the termination of energization of the resistance heater 22 to allow for a cool down period for the resistance heater. A visual indicator 156 may be provided for the user to indicate when the resistance heater 22 may have sufficiently cooled so as to allow for safe removal and handling of the resistance heater following termination of energization of the heater. For example, a red light may illuminate during the period that a receptacle is energized, and for a period, such as a minute, following the deenergization of the receptacle. At that point, the red light may be extinguished and a green light may be illuminated.

The embodiment of FIGS. 5 and 6 also allows for a master operation wherein a plurality of receptacles 140 may be controlled by a single timer in the form of a master timer 60 (FIG. 3). The master timer 60 may be mounted directly on the panel 142 of the controller 128 or may carried on a remote pendent 62. The remote pendent 62 may be connected by a communication path, such as a cable 64 and a receptacle 165 or a wireless communication arrangement, to the controller 128. The master timer 60 may be used to provide an alternate path for electricity from the source of current to the various receptacles 140, when the selector switches 152 are positioned in the automatic mode position.

By using the master timer 60, the user may simultaneously control a plurality of the receptacles 140, and thus energize a plurality of the resistance heaters 22 simultaneously, thereby reducing the length of time required to heat a plurality of studs, for example. In a power plant environment, this time savings will help to greatly reduce the length

US 7,141,766 B2

7

of time a particular electricity generating device may be out of service for repair or maintenance.

As is apparent from the foregoing specification, the invention is susceptible of being embodied with various alterations and modifications which may differ particularly from those that have been described in the preceding specification and description. It should be understood that we wish to embody within the scope of the patent warranted hereon all such modifications as reasonably and properly come within the scope of our contribution to the art.

We claim as our invention:

1. A resistance heating system comprising:
a controller configured to be connected to a source of alternating current electricity and having a plurality of cable plug receptacles arranged to receive electricity,
a plurality of electricity conducting cables, each having a cable plug at one end configured to be received in one of said receptacles and having a resistance heater provided at an opposite end,
an individual timer associated with each receptacle arranged to selectively provide such receptacle with electricity during a time interval,
a master timer connected with a communication arrangement to said controller,
said master timer arranged to selectively provide a plurality of said receptacles with electricity during a time interval, and
a switch to permit a user to select a master timer or an individual timer control for each receptacle.

2. A resistance heating system according to claim 1, wherein said individual timers and said master timer include an input arrangement for a user to input a selected time into said timers.

3. A resistance heating system according to claim 1, wherein said resistance heater comprises a bolt heater.

4. A resistance heating system according to claim 3, wherein said bolt heater includes a visual indicator to indicate when electrical current is being supplied to said bolt heater.

5. A resistance heating system according to claim 3, further including an adapter sheath arranged to effectively increase a diameter of said bolt heater.

6. A resistance heating system according to claim 1, wherein said source of alternating current electricity provides 480 volt electricity.

7. A resistance heating system according to claim 1, wherein said controller includes a visual indicator for displaying a status of each of said timers.

8. A resistance heating system according to claim 1, wherein said controller is mounted on a portable frame.

9. A resistance heating system comprising:
a controller configured to be connected to a source of alternating current electricity and having a plurality of cable plug receptacles arranged to receive electricity,
a plurality of electricity conducting cables each having a cable plug at one end configured to be received in said receptacles and having a resistance heater provided at an opposite end,
a master timer connected with a communication arrangement to said controller,
said master timer arranged to control an electric output of a plurality of said receptacles, and
an illumination display indicator associated with each receptacle to provide an indication of a status of each receptacle.

8

10. A resistance heating system according to claim 9, wherein said controller is mounted on a portable frame.

11. A resistance heating system according to claim 10, wherein said frame is provided with wheels.

12. A resistance heating system according to claim 9, wherein said master timer is provided remote from said controller.

13. A resistance heating system according to claim 9, wherein said master timer controls electricity flow to each of said receptacles.

14. A resistance heating system according to claim 9, wherein said controller includes a user operable selection switch to enable said master timer to control said electric output of said plurality of receptacles.

15. A resistance heating system according to claim 9, wherein said master timer includes an input arrangement for a user to input a selected time into said timer.

16. A resistance heating system comprising:
a controller configured to be connected to a source of alternating current electricity and having a plurality of cable plug receptacles,
a plurality of electricity conducting cables each having a cable plug at one end configured to be received in said receptacles and having a resistance heater provided at an opposite end,
a timer associated with each receptacle,
an input arrangement for a user to input a selected time into said timers, and
a visual indicator arranged to display a status of each of said receptacles.

17. A resistance heating system according to claim 16, wherein said controller is mounted on a portable frame.

18. A resistance heating system according to claim 16, further including a remote controller arranged to provide timer control for each of said receptacles simultaneously.

19. A resistance heating system according to claim 16, wherein said source of alternating current electricity comprises 480 volt, 3 phase alternating current electricity.

20. A resistance heating system according to claim 16, wherein said resistance heater comprises a bolt heater.

21. A resistance heating system according to claim 20, wherein said bolt heater includes a visual indicator to indicate when electrical current is being supplied to said bolt heater.

22. A resistance heating system according to claim 20, further including an adapter sheath arranged to effectively increase a diameter of said bolt heater.

23. A multiple receptacle controller comprising:
a portable frame configured to be connected to a source of alternating current electricity and having a plurality of cable plug receptacles arranged to receive electricity from said source,
an individual timer associated with each receptacle and arranged to selectively control an electric output of the associated receptacle, including an input arrangement for a user to input a selected time into said individual timer,
a master timer arranged to selectively control an electric output of a plurality of said receptacles, including an input arrangement for a user to input a selected time into said master timer,
said input arrangement for said master timer being located on a pendant separate and remote from said portable

US 7,141,766 B2

9

frame of said controller, said pendant being connected to said controller frame via an electricity conducting cable,

a switch associated with each receptacle to permit a user to select a master timer control or an individual timer control for each receptacle.

24. A multiple receptacle controller according to claim **23**, wherein said frame is wheeled.

25. A multiple receptacle controller according to claim **23**, wherein said switch further permits a user to energize each

10

associated receptacle regardless of the status of any timer associated with said receptacle.

26. A multiple receptacle controller according to claim **23**, further including a timing circuit to measure a period of time following the termination of energization of the receptacle by the selected timer and an illumination display energized following the termination of said period of time.

* * * * *

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH

B



# Sonnenschein

SONNENSCHEIN NATH & ROSENTHAL LLP

**Kevin W. Guynn**
312-876-2886
KGuynn@sonnenschein.com

8000 Sears Tower
233 South Wacker Drive
Chicago, IL 60606
312.876.8000
312.876.7934 fax
www.sonnenschein.com

*Chicago*
*Kansas City*
*Los Angeles*
*New York*
*San Francisco*
*Short Hills, N.J.*
*St. Louis*
*Washington, D.C.*
*West Palm Beach*

March 8, 2005
**VIA FED EXPRESS**

Mr. Thomas Decker
President
Thermal Technologies, Inc.
13515 S. 4190 Road
Claremore, OK 74017

Re:    Porta-Safe Speed Heater Controller, Our Ref. 09793768-0061

Dear Mr. Decker:

Our firm represents Power House Tool, Inc. (PHT) and JNT Technical Services, Inc. (JNT) in connection with intellectual property matters.  Pursuant to our representation, we are involved securing patent and other protection for various aspects of their Porta-Safe Speed Heater Controller (controller) of the type that you recently used on loan from them.  It is my understanding that while you had this controller in your possession, unauthorized access was made to the interior components of the controller, perhaps in an attempt to gain an illicit knowledge of its internal workings.

We hereby place you on notice that a patent is pending to protect this controller, and any activities of your company that violate any patent rights of PHT and JNT will be investigated thoroughly and dealt with promptly by PHT and JNT, in a manner to fully protect their rights and investment in this product.  PHT and JNT also have various other rights with respect to this device, including trademark, trade dress and trade secret rights, which they will seek to enforce against unlicensed infringers.

Please provide us with your written assurances, within 10 days, that you are not seeking to duplicate or copy the technology embodied in the Porta-Safe Speed Heater Controller or its appearance, and that you will respect the rights of PHT and JNT with regard to this controller.

Very truly yours,

SONNENSCHEIN NATH & ROSENTHAL, LLP

Kevin W. Guynn

11848507



08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH

C



# Thermal Technologies, Inc.

500 S. Lynn Riggs, PMS 125 • Claremore, OK 74017 • 918 283-6788 • fax 918 283-1521 • Email: TDTTI@aol.com

Friday, March 11, 2005

R E C E I V E D

MAR 1 5 2005

SONNENSCHEIN

Mr. Kevin W.Guynn
233 South Wacker Drive
Chicago, IL 60606

**Re:**    **Porta-Safe Speed Heater Controller, Your Ref. 09793768-0061**

Dear Mr. Guynn:

In reference and response to your letter received on March 11th 2005.

Thermal Technologies, Inc. stands firm on operating this corporation with the utmost honesty and business ethics, AND in no way did Thermal Technologies try to copy, duplicate, or any other matter that would jeopardize the relationship with both JNT, OR Power House Tools.

It was our understanding on March 2nd 2005 there was an agreement mad between Power House Tool and Thermal Technologies to work in conjunction with one another for the sale and service of this product. Power House Tools were to supply and support TTI with both the unit and heaters, TTI would give commission to their sales people for locating projects which TTI would provide service. TTI was purchasing all equipment from PHT. Power House Tools was to pay TTI commission on any sales of the unit which was generated by TTI service.

Thermal Technologies did not violate any patent pending law. It would be only in the best intentions to work together in this, per our March 2nd agreement

We would like to inform you however, TTI did not open the unit to look into the interior components, American Electric Power Corporation did however, the electrician on site before powering the unit up to 480 Volt. This was done to JNT, and Power House Tools operating manual Page 5.

If JNT, and PHT did not want people to open the unit, then they should replace the manual they send out to their customers. It is only a matter of safe practice to check all components before you energize any power supply.

We respect your patent pending and understand your concern; we also have patents on various products and are well familiar with the process.

I hope this has cleared the matter up, and our agreement will continue in the future.

Regards

Tom Decker
President
Thermal Technologies, Inc.



EXHIBIT
C

1) Upon receipt, remove all external packaging and crating by lifting the 2 wheeled cart unit vertically onto a level surface.

2) The Porta-Safe unit should be checked immediately for shipping damage. If damage has occurred from shipping please contact Porta-Safe in writing as soon as possible.

3) All breakers should be in the off or tripped position from shipping. Please be sure this is the case before energizing.

4) Remove the deadfront cover and inspect all connections for loose wiring. Should loose wiring be found, torque the connection down to its proper position. Torque can be determined by the sticker located on the inside of the electrical cabinet. Replace dead front.

5) Connect the main power by connecting the SO cable to a 100 amp 3∅ 480 volt service.

6) Only after the previous 6 steps are met can you proceed to power up the unit.

   (a) Be sure that all the breakers are in the off position.

   (b) Turn on 80 amp 3∅ 480 volt primary feed breaker

   (c) Turn on the 30 amp  3∅ 480 volt  breaker for reach receptacle that is going to be used.

   (d) It must be stressed that equipment be plugged into a receptacle only when the selector switch is in the off position.

   (e) **Caution! Excessive arcing may occur if a receptacle is disconnected under load not to mention it may damage the equipment.**

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH

D

- 6 bolts at one time regardless of diameter
- Stud ranges from .553 diameter holes and up.
- No water needed
- Cross over piping and shell removal at same time.
- Lightweight Machine
- Output power from 0-100%
- Hole diameter v. rod diameter not limited by clearance.
- Shell removal in 1/3 of time
- Endorsed by TXU & AEP power companies
- Trained technicians for fast and safe service
- Each wand is capable of its own operation either by remote or manual operation.



# XTREME BOLTING

Call for quote

Service available worldwide

www.ttiint.com

Sales Office (800) 485-6094

Thermal Technologies

Xtreme Bolting Services

13515 S. 4190 Rd. • Claremore, OK 74017

Phone: (918) 343-1420 • Fax: (918) 343-0601

Printed by BURCO International, Inc. 800.388.3864 - 11/06



EXHIBIT
D



08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH

E

Case 1:08-cv-03611    Document 1-6    Filed 06/24/2008    Page 2 of 8



The Corporate Website for Thermal Technologies, Inc. and Xtreme Bolting Services, Inc.



Home          Services          Products          Company          Contact Us



Our range of products and services will more than suit the most challenging project.

**Xtreme Bolting Services**



Xtreme Bolting Machine

Bolt Load Verification

Turbine Warming

Turbine Casing Closure



TTI is excited to offer the services of Xtreme Bolting Services, Inc. Xtreme Bolting Services has made a commitment to addressing the unique needs of the power generation industry, focusing on both high-quality products and prompt, courteous services. The team from Xtreme Bolting Services together with TTI can handle all of your bolting needs. This is accomplished through a combination of technological expertise and industry know-how, with a constant emphasis on quality and service.

**Call
1 (918) 361-2082    for
our Xtreme Bolting
Services or email us at**
sales@xtremebolting.com



THE XTREME BOLTING MACHINE



Our patented bolting solution designed to save you time and money with no water hazards and no special wiring.

BOLT LOAD VERIFICATION



Utilizes ultrasonic waves to determine the stretch on bolts for fast, accurate results.

TURBINE WARMING SYSTEMS



With warming systems for peaking units, turbine operators can expect faster start-up, longer life and less maintenance.



EXHIBIT
E

Xtreme Bolting Services > Services

### HYDRAULIC TURBINE CASING CLOSURE



Eliminates the need for bolt heating and torquing between breakouts and final closure.

Home  |  Services  |  Products  |  Company  |  Contact Us

All information here Copyright © 2004 Thermal Technologies Inc. All rights reserved. The authors of this site express no legal obligation to the content contained herein, nor the use thereof by visiting persons. Should anyone have any questions regarding the content of the site, please contact TTI directly.

Case 1:08-cv-03611    Document 1-6    Filed 06/24/2008    Page 4 of 8



The Corporate Website for Thermal Technologies, Inc. and Xtreme Bolting Services, Inc.



Home        Services        Products        Company        Contact Us



## Services

Our range of products and services will more than suit the most challenging project.

### Xtreme Bolting Services



Xtreme Bolt Machine
Bolt Load Verification
Turbine Warming
Turbine Casing Closure

Xtreme Bolt Machine

Bolt Load Verification

Turbine Warming

Turbine Casing Closure

**For more information please download:**
Xtreme Bolting Services.pdf
(Opens in a new window.)

Requires Adobe Reader


Get
ADOBE READER





## Xtreme Bolting Service    Xtreme Bolting Machine







After years of research and development, Xtreme Bolting Services, Inc., introduced the patented Xtreme Bolting Machine (XBM) at the Power-Gen show in November 2006. The XBM has several advantages over the Induction Heating method that has been the industry standard for bolt removal during an outage. Our system is light weight, economical to use, simple to operate and robust in construction.

Size and weight are just two small advantages of the system, but when one considers that a single, 85 lb machine can remove 6 bolts at a time, the money saved on reduced outage time quickly becomes the biggest advantage of all. The Xtreme Bolting Machine and the services from Xtreme Bolting Services offered in conjunction with TTI has continued to gain popularity since its introduction.





## ADVANTAGES

- Capable of heating six (6) bolts at one time anywhere within fifty (50) feet of the machine location.
- Remove or tighten within one shift
- Shell removal in 1/3 the time it takes for induction removal, thus reducing outage time by days.
- Can save Millions of dollars in down time
- Can pull studs on stop valves and the turbine shell at the same time.
- No water required.
- No special wiring required.
- Utilize the 480V/60 amp service right on the turbine deck.
- Lightweight machine needs no crane or forklift to move.
- Options available for basic heat treating applications such as PWHT and Pre-heating.

Xtreme Bolting Services, Inc.
Phone:        1 (918) 361-2082
Email: Sales@xtremebolting.com

Talk to someone about our products
and services.

Home  |  Services  |  Products  |  Company  |  Contact Us

All information here Copyright © 2004 Thermal Technologies Inc. All rights reserved. The authors of this site express no legal obligation to the content contained herein, nor the use thereof by visiting persons. Should anyone have any questions regarding the content of the site, please contact TTI directly.



The Corporate Website for Thermal Technologies, Inc. and Xtreme Bolting Services. Inc



Home        Services        Products        Company        Contact Us



Thermal
Technologies

Global presence.
Industry leadership.
And a commitment to
meeting each client's
unique requirements.

## Finally, *your* solution is HERE.



**Come to TTI for all of
your Heat Treating and
Bolting needs.**

**Thermal Technologies, Inc**
13515 S 4190 Road
Claremore, OK 74017

**Sales & Support:**
**1 (800) 485-6094**

When it comes to power and petro-chemical industries, administrators realize the need for state-of-the-art heat treating solutions. Now, thanks to Thermal Technologies, Inc., better known as TTI, and our partner company Xtreme Bolting Services, Inc., quality services like this have become available to the mainstream market, empowering plant operators with the best solutions with regards to cost, efficiency and quality.

We offer a wide range of products and services, each specifically developed to meet the complex needs of our clients. To learn more, please click a subcategory below.

### Services

THE MOST COMPLETE
AND COMPREHENSIVE
SERVICES AVAILABLE
FOR ALL OF YOUR
BOLTING AND HEAT
TREATING NEEDS.





### Products

COST EFFECTIVE AND
INDUSTRY LEADING
PRODUCTS, INCLUDING
HEAT TREATING
CONSOLES AND
TURBINE WARMING
SYSTEMS.

Home | Services | Products | Company | Contact Us

All information here Copyright © 2004 Thermal Technologies Inc. All rights reserved. The authors of this site express no legal obligation to the content contained herein, nor the use thereof by visiting persons. Should anyone have any questions regarding the content of the site, please contact TTI directly.




The Corporate Website for Thermal Technologies, Inc. and Xtreme Bolting Services, Inc.

Home     Services     Products     Company     Contact Us



About TTI

Both productive and efficient, we provide unparalleled expertise to the power industry.

About Us
Locations
Events

**Come to TTI and Xtreme Bolting for all of your Heat Treating and Bolting needs.**



## Who is TTI?

Thermal Technologies, Inc., (TTI), is a privately held corporation headquartered in Claremore, OK. Established in 2004, TTI was formed by industry veterans who joined forces to provide expert heat treating services and great customer satisfaction at a reasonable price. TTI has extensive quality assurance and safety programs, and complies with governing codes for specific industry requirements. Utilizing electric resistance and combustion methods, TTI provides a wide range of heat treating services to the power generation, refining, fabrication, etc. such as: Preheat & Post-Weld Heat Treatment (PWHT) Services, Refractory Dry-Outs, Furnace & Combustion Firing, and Equipment Repair & Calibration. With over 80 of years combined experience, our mission is to empower plant administrators with effective heat treating solutions, as well as, cutting-edge analysis and troubleshooting.

TTI tailors our products and services to meet our clients' unique requirements. We provide the kind of service that sustains long-term relationships; relationships that enable us to respond more efficiently and proactively to our customers' changing needs. Our commitment to partner with each of our clients is based on the concepts of high quality, personal service and cutting-edge innovation.

## What is Xtreme Bolting Services?



Started in 2006 as a spin-off of TTI, Xtreme Bolting Services was founded to target the unique needs of the power industry. As our name indicates, Xtreme Bolting primarily works on the loosening and tightening of bolts on power plant turbines and valves. With years of experience with other companies and using other bolting techniques, Xtreme Bolting was started with the objectives of being the fastest, most knowledgeable, and most professional bolting company in the market. But, we are not limited to just bolting. Xtreme Bolting also offers turbine warming systems for peaking units and hydraulic casing closures for performing alignments during outages. Working with TTI, we can also provide post-weld heat treating on turbine shells and pipes. For more information about Xtreme Bolting, click on the Xtreme Bolting logo in the top right corner of this page.

If you have any questions at all concerning our work, please do not hesitate to Contact Us.

# Corporate Headquarters

Thermal Technologies, Inc.
Xtreme Bolting Services, Inc.
13515 S 4190 Road
Claremore, OK 74017

## Sales & Support:
**1 (800) 485-6094**

Home | Services | Products | Company | Contact Us

All information here Copyright © 2004 Thermal Technologies Inc. All rights reserved. The authors of this site express no legal obligation to the content contained herein, nor the use thereof by visiting persons. Should anyone have any questions regarding the content of the site, please contact TTI directly.

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH

F

# GREER, BURNS & CRAIN, LTD.

*Attorneys at Law*

300 SOUTH WACKER DRIVE
SUITE 2500
CHICAGO, ILLINOIS 60606-6771
TELEPHONE (312) 360-0080
FACSIMILE (312) 360-9315

WWW.GBCLAW.NET
WRITER'S DIRECT DIAL
312-987-2917
WRITER'S E-MAIL ADDRESS
KGUYNN@GBC.NET

December 11, 2006

ROGER D. GREER
PATRICK G. BURNS
LAWRENCE J. CRAIN
STEVEN P. FALLON
PAUL G. JUETTNER
JAMES K. FOLKER
B. JOE KIM
THOMAS R. FITZSIMONS
CAROLE A. MICKELSON
KEVIN W. GUYNN
—————
JOSH C. SNIDER
BRITTANY C. MACDONALD
ARIK B. RANSON
JOSEPH P. FOX
LAURA R. WANEK
REBECCA L. URYGA
CHRISTOPHER J. McGEEHAN

OF COUNSEL:
THOMAS R. JUETTNER*
JOHN W. CHESTNUT
PHILIP M. KOLEHMAINEN
—————
SAN DIEGO OFFICE
110 WEST C STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 234-1130

*ADMITTED IN CALIFORNIA AND ILLINOIS

**VIA CERTIFIED MAIL**

Mr. David Poole
Vice President and Legal Counsel
TXU Corp.
Energy Plaza
1601 Bryan St.
Dallas, TX 75201

Re:     Infringement of U.S. Patent No. 7,141,766
        by X-Treme Bolting machine
        Our File 4440.76431

Dear Mr. Poole:

       We represent Power House Tool, Inc. (PHT) and JNT Technical Services, Inc. (JNT) with respect to their intellectual property matters, and particular, with respect to their U.S. Patent No. 7,141,766 ('766 patent). We have been made aware of the X-Treme Bolting machine, which, according to the enclosed brochure of Thermal Technologies, Inc. is endorsed by TXU. This brochure was distributed at the recent Power Gen International show in Orlando where there were more than 16,000 people in attendance.

       We are investigating and reviewing the structure and operation of the X-Treme Bolting machine with respect to questions of infringement of the '766 patent. One reason for our investigation is that personnel of Thermal Technologies had access to a device covered by that patent which was supplied by PHT and JNT some time ago. Thermal Technologies has not been authorized by PHT or JNT to make, use or sell any device that is covered by the '766 patent, so any use of an infringing device made by Thermal Technologies would also be unauthorized.



EXHIBIT
F

Mr. David Poole

December 11, 2006
Page 2


        Because of TXU's endorsement of this product, and therefore its potential liability based at least on use of the product, and perhaps also based on inducement of others to use the product, we are putting you on notice of this patent and our investigation.  As soon as we have completed our review, we will be back in touch with you.


        Very truly yours,

        GREER, BURNS & CRAIN, LTD.

By                     
            Kevin W. Guynn

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH

G

**Sent:** Thursday, May 24, 2007 1 - 5 AM
**To:** Kevin Guynn
**Subject:** RE: Infringement of U.S. Patent No. 7,141,766 by X-Treme Bolting machine, our file 4440.77530

Kevin:

We can find no record of TXU ever endorsing this product. As a matter of practice, we do not endorse products. It would be an unusual activity requiring VP or higher approval. No such request was routed through the individuals who would have made that decision or to any other executive to our knowledge. We have found no drawings, instruction manuals or any other documentation within TXU that would support this request.

Please let me know if you have any other questions. Thanks.


John C. Stewart
Vice President, Litigation
TXU Legal
1601 Bryan Street, 6th Floor
Dallas, Texas 75201
214.812.3722
214.812.6032 (fax)
jstewart@txu.com


---

**From:** Kevin Guynn [mailto:kguynn@gbclaw.net]
**Sent:** Monday, May 14, 2007 2:21 PM
**To:** Stewart, John
**Subject:** RE: Infringement of U.S. Patent No. 7,141,766 by X-Treme Bolting machine, our file 4440.77530

John,

Have you ever heard from your client regarding their "endorsement" of the X-Treme Bolting machine?

*Kevin W. Guynn*
**Greer, Burns & Crain, Ltd.**
300 S. Wacker Drive, Suite 2500
Chicago, IL 60606
Tel.: 312-987-2917
Fax: 312-360-9315
Email: kguynn@gbclaw.net

---

**From:** JStewart@txu.com [mailto:JStewart@txu.com]
**Sent:** Thursday, March 08, 2007 5:33 PM
**To:** Kevin Guynn
**Cc:** aranton@txu.com
**Subject:** RE: Infringement of U.S. Patent No. 7,141,766 by X-Treme Bolting machine, our file 4440.77530

Thanks Kevin. I will need to check with the client to whom I passed on your request. I'll get back to you next week.

Sorry for the delay.

John

---

**From:** Kevin Guynn [mailto:kguynn@gbclaw.net]
**Sent:** Thursday, March 08, 2007 11:40 AM
**To:** Stewart, John
**Subject:** FW: Infringement of U.S. Patent No. 7,141,766 by X-Treme Bolting machine, our file 4440.77530

Dear Mr. Stewart,



5/30/2007

*Kevin W. Guynn*
**Greer, Burns & Crain, Ltd.**
300 S. Wacker Drive, Suite 2500
Chicago, IL 60606
Tel.: 312-987-2917
Fax: 312-360-9315
Email: kguynn@gbclaw.net

---

**From:** Kevin Guynn [mailto:kguynn@gbclaw.net]
**Sent:** Wednesday, January 31, 2007 3:46 PM
**To:** 'jstewart@txu.com'
**Subject:** Infringement of U.S. Patent No. 7,141,766 by X-Treme Bolting machine, our file 4440.76431

Please see attached letter.

*Kevin W. Guynn*
**Greer, Burns & Crain, Ltd.**
300 S. Wacker Drive, Suite 2500
Chicago, IL 60606
Tel.: 312-987-2917
Fax: 312-360-9315
Email: kguynn@gbclaw.net

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH



```
MODE = MEMORY TRANSMISSION        START=JAN-31 15:26   END=JAN-31 15:27

    FILE NO.=660

STN    COMM.    ONE-TOUCH/   STATION NAME/TEL. NO.              PAGES    DURATION
NO.             ABBR NO.

001    OK       ‰            919183430601-444076431            003/003   00:00:38


                                          -GREER, BURNS & CRAIN, LTD-

******************************* -        - ***** -      312 360 9315- *********
```

Suite 2500
300 South Wacker Drive
Chicago, Illinois 60606
Telephone (312) 360-0080
Facsimile (312) 360-9315

# GREER, BURNS & CRAIN, LTD.

## Facsimile Cover Sheet

| To: | Thomas Decker | From: | Kevin W. Guynn |
|---|---|---|---|
| Fax: | 918-343-0601 | 1-31-2007 | |
| Your Ref: | | Our Ref: | 4440-76431 |

Pages (including cover sheet) 3     Original Will ☐     Will Not ☒ Follow

☐ Urgent          ☐ For Review          ☐ Please Reply

IF THIS FACSIMILE IS RECEIVED INCOMPLETE, PLEASE CONTACT Tina Kiselka at

(312) 360-0080.

● Comments:

The documents accompanying this facsimile transmission contain information that may be confidential or privileged and exempt from disclosure under applicable law. The information is intended to be for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is without authorization and is prohibited. If you have received this facsimile in error, please notify us by collect telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you.


EXHIBIT
H

FILE COPY

# GREER, BURNS & CRAIN, LTD.

*Attorneys at Law*

300 SOUTH WACKER DRIVE
SUITE 2500
CHICAGO, ILLINOIS 60606-6771
TELEPHONE (312) 360-0080
FACSIMILE (312) 360-9315

WWW.GBCLAW.NET
WRITER'S DIRECT DIAL
312-987-2917
WRITER'S E-MAIL ADDRESS
KGUYNN@GBC.NET

January 31, 2007

ROGER D. GREER
PATRICK G. BURNS
LAWRENCE J. CRAIN
STEVEN P. FALLON
PAUL G. JUETTNER
JAMES K. FOLKER
B. JOE KIM
THOMAS R. FITZSIMONS
CAROLE A. MICKELSON
KEVIN W. GUYNN
────────
JOSH C. SNIDER
BRITTANY C. MACDONALD
ARIK B. RANSON
JOSEPH P. FOX
LAURA R. WANEK
REBECCA L. URYGA
CHRISTOPHER J. McGEEHAN

OF COUNSEL:
THOMAS R. JUETTNER*
JOHN W. CHESTNUT
PHILIP M. KOLEHMAINEN
────────
SAN DIEGO OFFICE
110 WEST C STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 234-1130
*ADMITTED IN CALIFORNIA AND ILLINOIS

<u>VIA TELEFAX  (918-343-0601)</u>

Mr. Thomas Decker
President
Thermal Technologies, Inc.
500 S. Lynn Riggs, PMS 125
Claremore, OK 74017

      Re:    Infringement of U.S. Patent No. 7,141,766
            by X-Treme Bolting machine
            <u>Our File 4440.76431</u>

Dear Mr. Decker:

        We represent Power House Tool, Inc. (PHT) and JNT Technical Services, Inc. (JNT) with respect to their intellectual property matters.  In this regard, your X-Treme Bolting machine, recently displayed and offered for sale at the Power-Gen International trade show in Orlando, Florida, and in your two sided brochure distributed at the trade show, was brought to our attention.

        We have reviewed the device illustrated and described in the brochure, as well as photographs of portions of this device.  It is evident that this device was copied from the Porta-Safe® Speed Heater® Controller (controller) that you borrowed from PHT and JNT a year and a half ago.  At the time, you were placed on notice that a patent application was pending and that PHT and JNT would enforce their rights against unauthorized infringers of their rights.

        The patent noted above has issued to PHT and JNT, and it appears that your X-Treme Bolting machine likely infringes several of the claims of that patent.  Although PHT and JNT would like to resolve this issue amicably, they must insist that you cease and desist from further manufacture, use, sale or offers to sell this device, without written authorization or license

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH

I

```
MODE = MEMORY TRANSMISSION        START=MAR-08 15:21   END=MAR-08 15:23

    FILE NO.=460

STN    COMM.   ONE-TOUCH/   STATION NAME/TEL NO.                    PAGES   DURATION
NO.            ABBR NO.

001    OK      #            919183430601-444077530                 003/003  00:00:42


                                         -GREER, BURNS & CRAIN, LTD-

*************************************** -       - **** -    312 360 9315- ********
```

Suite 2500
300 South Wacker Drive
Chicago, Illinois 60606
Telephone (312) 360-0080
Facsimile (312) 360-9315

# GREER, BURNS & CRAIN, LTD.

## Facsimile Cover Sheet

| To: | Thomas Decker | From: | Kevin W. Guynn |
|---|---|---|---|
| Fax: | 918-343-0601 | 3-08-2007 | |
| Your Ref: | | Our Ref: | 4440-77530 |

Pages (including cover sheet) 3     Original Will ☐     Will Not ☒ Follow

☐ Urgent          ☐ For Review          ☐ Please Reply

IF THIS FACSIMILE IS RECEIVED INCOMPLETE, PLEASE CONTACT Tina Kiselka at

(312) 360-0080.

● Comments:

   Dear Mr. Decker:

      I have not received a response from you with respect to my letter dated January
31, 2007 (enclosed).

      Please provide a response within seven (7) days.

EXHIBIT
I

The documents accompanying this facsimile transmission contain information that may be confidential or privileged and exempt from disclosure under applicable law. The information is intended to be for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is without authorization and is prohibited. If you have received this facsimile in error, please notify us by collect telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you.

Suite 2500
300 South Wacker Drive
Chicago, Illinois  60606
Telephone (312) 360-0080
Facsimile (312) 360-9315

# GREER, BURNS & CRAIN, LTD.

# Facsimile Cover Sheet

| | | | |
|---|---|---|---|
| **To:** | Thomas Decker | **From:** | Kevin W. Guynn |
| **Fax:** | 918-343-0601 | 3-08-2007 | |
| **Your Ref:** | | **Our Ref:** | 4440-77530 |

Pages (including cover sheet) 3          **Original Will** ☐          **Will Not** ☒ **Follow**

☐ **Urgent**                    ☐**For Review**                    ☐**Please Reply**

IF THIS FACSIMILE IS RECEIVED INCOMPLETE, PLEASE CONTACT Tina Kiselka at

(312) 360-0080.

● **Comments:**

> **Dear Mr. Decker:**
>
> I have not received a response from you with respect to my letter dated January 31, 2007 (enclosed).
>
> Please provide a response within seven (7) days.

The documents accompanying this facsimile transmission contain information that may be confidential or privileged and exempt from disclosure under applicable law.  The information is intended to be for the use of the individual or entity named on this transmission sheet.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is without authorization and is prohibited.  If you have received this facsimile in error, please notify us by collect telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you.

# GREER, BURNS & CRAIN, LTD.
*Attorneys at Law*
### 300 SOUTH WACKER DRIVE
### SUITE 2500
### CHICAGO, ILLINOIS 60606-6771
### TELEPHONE (312) 360-0080
### FACSIMILE (312) 360-9315

ROGER D. GREER
PATRICK G. BURNS
LAWRENCE J. CRAIN
STEVEN P. FALLON
PAUL G. JUETTNER
JAMES K. FOLKER
B. JOE KIM
THOMAS R. FITZSIMONS
CAROLE A. MICKELSON
KEVIN W. GUYNN

JOSH C. SNIDER
BRITTANY C. MACDONALD
ARIK B. RANSON
JOSEPH P. FOX
LAURA R. WANEK
REBECCA L. URYGA
CHRISTOPHER J. McGEEHAN

WWW.GBCLAW.NET
WRITER'S DIRECT DIAL
312-987-2917
WRITER'S E-MAIL ADDRESS
KGUYNN@GBC.NET

January 31, 2007

OF COUNSEL:
THOMAS R. JUETTNER*
JOHN W. CHESTNUT
PHILIP M. KOLEHMAINEN

SAN DIEGO OFFICE
110 WEST C STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 234-1130

*ADMITTED IN CALIFORNIA AND ILLINOIS



COPY

**VIA TELEFAX (918-343-0601)**

Mr. Thomas Decker
President
Thermal Technologies, Inc.
500 S. Lynn Riggs, PMS 125
Claremore, OK 74017

Re:   Infringement of U.S. Patent No. 7,141,766
      by X-Treme Bolting machine
      Our File 4440.77530

Dear Mr. Decker:

We represent Power House Tool, Inc. (PHT) and JNT Technical Services, Inc. (JNT) with respect to their intellectual property matters. In this regard, your X-Treme Bolting machine, recently displayed and offered for sale at the Power-Gen International trade show in Orlando, Florida, and in your two sided brochure distributed at the trade show, was brought to our attention.

We have reviewed the device illustrated and described in the brochure, as well as photographs of portions of this device. It is evident that this device was copied from the Porta-Safe® Speed Heater® Controller (controller) that you borrowed from PHT and JNT a year and a half ago. At the time, you were placed on notice that a patent application was pending and that PHT and JNT would enforce their rights against unauthorized infringers of their rights.

The patent noted above has issued to PHT and JNT, and it appears that your X-Treme Bolting machine likely infringes several of the claims of that patent. Although PHT and JNT would like to resolve this issue amicably, they must insist that you cease and desist from further manufacture, use, sale or offers to sell this device, without written authorization or license

Mr. Thomas Decker                                            January 31, 2007
                                                                      Page 2

from them unless you can demonstrate how your device avoids infringement of each of the claims of that patent.

   Within 10 days of receiving this letter, please provide me with your written assurances that you will cease all infringing activity with respect to this machine immediately, and will take steps to remove all reference to this machine from your advertising materials, unless and until you have received authorization to do so from PHT and JNT.

   If you believe that your device does not infringe the patent rights of PHT and JNT, please provide a full explanation of your position, along with photographs, drawings and a full description of your device, to support your position, again within the 10 day time frame. If no explanation is provided, we will take that to mean that you agree with our assessment of infringement.

   We are also investigating the truthfulness of your advertising, to determine whether it falls within the requirements of the Federal Trade Commission Act. Your company information published for the Power-Gen trade show stated that your bolting machine was "newly patented," however, we cannot find any indication of a patent issuing to your firm for such a machine. Please provide an identification of this patent. Your material also states that your device is "endorsed" by both TXU and AEP. Please provide us with a copy of that endorsement, and the name and position of the person providing each endorsement. Further, your web site indicates that you have registered the Trademark TTI, however, we cannot find any such registration. If you have registered this mark, please identify for us the registration number. As you may be aware, improper claiming of patent rights and trademark registration may constitute fraud.

   I look forward to receiving your prompt reply.


     Very truly yours,

     GREER, BURNS & CRAIN, LTD.

   By           
      Kevin W. Guynn

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH

J

# GREER, BURNS & CRAIN, LTD.

*Attorneys at Law*

### 300 SOUTH WACKER DRIVE
### SUITE 2500
### CHICAGO, ILLINOIS 60606-6771
### TELEPHONE (312) 360-0080
### FACSIMILE (312) 360-9315

ROGER D. GREER
PATRICK G. BURNS
LAWRENCE J. CRAIN
STEVEN P. FALLON
PAUL G. JUETTNER
JAMES K. FOLKER
B. JOE KIM
THOMAS R. FITZSIMONS
CAROLE A. MICKELSON
KEVIN W. GUYNN
_____
JOSH C. SNIDER
BRITTANY C. MACDONALD
ARIK B. RANSON
JOSEPH P. FOX
LAURA R. WANEK
REBECCA L. PUMPHREY
CHRISTOPHER J. McGEEHAN



OF COUNSEL:
THOMAS J. JUETTNER*
JOHN W. CHESTNUT
PHILIP M. KOLEHMAINEN

SAN DIEGO OFFICE
110 WEST C STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 234-1130

*ADMITTED IN CALIFORNIA AND ILLINOIS

WWW.GBCLAW.NET
WRITER'S DIRECT DIAL
312-987-2917
WRITER'S E-MAIL ADDRESS
KGUYNN@GBC.NET

July 25, 2007

**VIA TELEFAX  (918-343-0601)**

Mr. Thomas Decker
President
Thermal Technologies, Inc.
500 S. Lynn Riggs, PMS 125
Claremore, OK 74017

Re:    Infringement of U.S. Patent No. 7,141,766
          by X-Treme Bolting machine
          Our File 4440.77530

Dear Mr. Decker:

I previously wrote you on January 31, 2007, requesting an explanation from you with respect to the device you were marketing and using, as to why its use and/or sale would not be an infringement of my clients' U.S. Patent No. 7,141,766. You did not provide any such explanation, allowing us, as per my letter, to conclude that you cannot and do not deny infringement.

It is our understanding that you continue to use the equipment identified in my earlier letter, and that you continue to promote its use and/or sale. We are aware that you may be discussing and promoting the use of this equipment at a turbine maintenance seminar in Florida next month as well.

We reiterate our earlier demand that you cease and desist from any further infringement of the '766 patent. If we do not receive written assurances from you within 7 days, our clients will pursue all legal remedies available to them that they determine to be reasonably prudent and cost effective.



EXHIBIT
J

Mr. Thomas Decker                                                July 25, 2007
                                                                      Page 2


      I look forward to receiving your prompt reply.


               Very truly yours,

               GREER, BURNS & CRAIN, LTD.

By                                         
               Kevin W. Guynn

```
***********************
***   TX REPORT   ***
***********************


TRANSMISSION OK

TX/RX NO              4784
RECIPIENT ADDRESS     919183430601p444077530
DESTINATION ID
ST. TIME              07/25 08:13
TIME USE              00'27
PAGES SENT                3
RESULT                OK
```

Suite 2500
300 South Wacker Drive
Chicago, Illinois 60606
Telephone (312) 360-0080
Facsimile (312) 360-9315

# GREER, BURNS & CRAIN, LTD.

## Facsimile Cover Sheet

| To: | **Mr. Thomas Decker** | **From:** | **Kevin W. Guynn** |
|---|---|---|---|
| **Fax:** | 918-343-0601 | 7-25-2007 | **Infringement by X-Treme Bolting Machine** |
| **Your Ref:** | M1128058 | **Our Ref:** | 4440.77530 |

**Pages (including cover sheet) 3**     **Original Will** ☐     **Will Not** ☒ **Follow**

☐ **Urgent**          ☐ **For Review**          ☐ **Please Reply**

IF THIS FACSIMILE IS RECEIVED INCOMPLETE, PLEASE CONTACT Tina Kiselka AT (312) 360-0080.

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH



# BALOGH CHERRY MITCHELL & WILLIAMS

BERNADETTA BALOGH
SARA A. CHERRY
MARK A. MITCHELL
JERRY WILLIAMS

LEGAL ASSISTANTS
PAUL MURPHY
JUNE SIMMONS

July 25, 2007

Kevin Guynn
Greer, Burns & Crain, LTD
300 S. Wacker Dr., Ste. 2500
Chicago, IL 60606-6771
(312) 360-0080
Fax: (312) 360-9315

      Re:    Infringement of U.S. Patent No. 7,141,766
             By X-Treme Bolting Machine
             Your File 4440.77530

Dear Sir:

    Who are you?  Who is your client?

    My client Thermal Technologies, Inc. denies any infringement of any patents owned by your clients, whoever they may be.

                          Sincerely,

                          Jerry Williams

JW/jls

*324 South Main, Suite 601, Tulsa, Oklahoma 74103-3682*
*Tel: (918) 599-9007*
*Fax: (918) 599-8316*


EXHIBIT
K

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH

L

# GREER, BURNS & CRAIN, LTD.

*Attorneys at Law*

300 SOUTH WACKER DRIVE
SUITE 2500
CHICAGO, ILLINOIS 60606-6771
TELEPHONE (312) 360-0080
FACSIMILE (312) 360-9315

WWW.GBCLAW.NET
WRITER'S DIRECT DIAL
312-987-2917
WRITER'S E-MAIL ADDRESS
KGUYNN@GBC.NET



ROGER D. GREER
PATRICK G. BURNS
LAWRENCE J. CRAIN
STEVEN P. FALLON
PAUL G. JUETTNER
JAMES K. FOLKER
B. JOE KIM
THOMAS R. FITZSIMONS
CAROLE A. MICKELSON
KEVIN W. GUYNN

JOSH C. SNIDER
BRITTANY C. MACDONALD
ARIK B. RANSON
JOSEPH P. FOX
LAURA R. WANEK
REBECCA L. PUMPHREY
CHRISTOPHER J. McGEEHAN

OF COUNSEL:
THOMAS R. JUETTNER*
JOHN W. CHESTNUT
PHILIP M. KOLEHMAINEN

SAN DIEGO OFFICE
110 WEST C STREET
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 234-1130

*ADMITTED IN CALIFORNIA AND ILLINOIS

July 25, 2007

**VIA TELEFAX  (918-599-8316)**

Jerry Williams
BALOGH CHERRY MITCHELL & WILLIAMS
324 S. Main, Suite 601
Tulsa, OK 74103-3682

Re:    Infringement of U.S. Patent No. 7,141,766
by X-Treme Bolting machine
Our File 4440.77530

Dear Mr. Williams:

Attached is a copy of the letter I sent to your client on January 31, 2007, without receiving a response.

Once you review that letter, and the referenced patent, and your client's activities and product, you can respond substantively, rather than providing me with a blanket denial without having any facts in front of you.

I look forward to receiving your substantive response shortly.

Very truly yours,

GREER, BURNS & CRAIN, LTD.

By    Kevin W. Guynn

KWG:tk
Enclosure



08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH

M

# BALOGH CHERRY MITCHELL & WILLIAMS

BERNADETTA BALOGH
SARA A. CHERRY
MARK A. MITCHELL
JERRY WILLIAMS

LEGAL ASSISTANTS
PAUL MURPHY
JUNE SIMMONS

July 30, 2007

Kevin Guynn
Greer, Burns & Crain, Ltd.
300 S. Wacker Dr., Suite 2500
Chicago, IL 60606-6771
(312) 360-0080
Fax: (312) 360-9315

Re:   Infringement of U.S. Patent No. 7,141,766
      By X-Treme Bolting Machine
      Your file 4440.77530

Dear Mr. Guynn:

Thank you for your letter dated July 25, 2007 and letter of January 31, 2007 clarifying who you and your clients are.

Would you please now clarify what claims regarding your client's patent that is likely being infringed upon. My client does not believe that there is any similarity between your product and theirs.

Sincerely,

Jerry Williams

JW/jls

**324 South Main, Suite 601, Tulsa, Oklahoma 74103-3682**
**Tel: (918) 599-9007**
**Fax: (918) 599-8316**


EXHIBIT
M

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH

N

# GREER, BURNS & CRAIN, LTD.

*Attorneys at Law*

300 SOUTH WACKER DRIVE
SUITE 2500
CHICAGO, ILLINOIS 60606-6771
TELEPHONE (312) 360-0080
FACSIMILE (312) 360-9315

WWW.GBCLAW.NET
WRITER'S DIRECT DIAL
312-987-2917
WRITER'S E-MAIL ADDRESS
KGUYNN@GBC.NET

ROGER D. GREER
PATRICK G. BURNS
LAWRENCE J. CRAIN
STEVEN P. FALLON
PAUL G. JUETTNER
JAMES K. FOLKER
B. JOE KIM
THOMAS R. FITZSIMONS
CAROLE A. MICKELSON
KEVIN W. GUYNN

ARIK B. RANSON
JOSEPH P. FOX
LAURA R. WANEK
REBECCA L. PUMPHREY
CHRISTOPHER J. McGEEHAN
CHRISTOPHER S. HERMANSON

OF COUNSEL:
THOMAS R. JUETTNER*
JOHN W. CHESTNUT
PHILIP M. KOLEHMAINEN

*ADMITTED IN CALIFORNIA AND ILLINOIS

August 20, 2007

<u>VIA TELEFAX  (918-599-8316)</u>

Jerry Williams
BALOGH CHERRY MITCHELL & WILLIAMS
324 S. Main, Suite 601
Tulsa, OK 74103-3682

> Re:   Infringement of U.S. Patent No. 7,141,766
>        by X-Treme Bolting machine
>        <u>Our File 4440.77530</u>

Dear Mr. Williams:

In response to your letter dated July 30, 2007 and your request for an identification of claims being infringed, we must point to our letter of January 31, 2007 and request that you provide us with photographs, drawings and a full description of your client's device in order for us to provide a complete and accurate response.  If you are unable or unwilling to provide this information then, in accordance with settle case law, we will be compelled to assume that your client's device does infringe one or more claims of the identified patent and that it continues to manufacture, sell or offer to sell an infringing device.

We look forward to receiving these materials from you at your earliest convenience so that we may provide the response you seek.

Very truly yours,

GREER, BURNS & CRAIN, LTD.

By        Kevin W. Guynn

Kevin W. Guynn

KWG:tk



EXHIBIT
N

```
                    ********************
                    ***  TX REPORT   ***
                    ********************


        TRANSMISSION OK

        TX/RX NO              0505
        RECIPIENT ADDRESS     919185998316p444077530
        DESTINATION ID
        ST. TIME              08/21 10:28
        TIME USE              00'49
        PAGES SENT              2
        RESULT               OK
```

Suite 2500
300 South Wacker Drive
Chicago, Illinois  60606
Telephone (312) 360-0080
Facsimile (312) 360-9315

# GREER, BURNS & CRAIN, LTD.

# Facsimile Cover Sheet

| To: | **Jerry Williams** | **From:** | **Kevin W. Guynn** |
|---|---|---|---|
| **Fax:** | **918-599-8316** | **8-20-2007** | **Infringement by X-Treme Bolting Machine** |
| **Your Ref:** | | **Our Ref:** | **4440.77530** |

**Pages (including cover sheet) 2**      **Original Will** ☐      **Will Not** ☒ **Follow**

☐ **Urgent**              ☐ **For Review**              ☐ **Please Reply**

IF THIS FACSIMILE IS RECEIVED INCOMPLETE, PLEASE CONTACT Tina Kiselka AT (312) 360-0080.

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH



# GREER, BURNS & CRAIN, LTD.
*Attorneys at Law*

300 SOUTH WACKER DRIVE
SUITE 2500
CHICAGO, ILLINOIS 60606-6771
TELEPHONE (312) 360-0080
FACSIMILE (312) 360-9315

WWW.GBCLAW.NET

WRITER'S DIRECT DIAL
312-987-2917
WRITER'S E-MAIL ADDRESS
KGUYNN@GBC.NET

ROGER D. GREER
PATRICK G. BURNS
LAWRENCE J. CRAIN
STEVEN P. FALLON
PAUL G. JUETTNER
JAMES K. FOLKER
B. JOE KIM
THOMAS R. FITZSIMONS
CAROLE A. MICKELSON
KEVIN W. GUYNN

ARIK B. RANSON
JOSEPH P. FOX
LAURA R. WANEK
REBECCA L. PUMPHREY
CHRISTOPHER J. McGEEHAN
CHRISTOPHER S. HERMANSON
ANUJ K. WADHWA

OF COUNSEL:
THOMAS R. JUETTNER*
JOHN W. CHESTNUT
PHILIP M. KOLEHMAINEN

*ADMITTED IN CALIFORNIA AND ILLINOIS

February 1, 2008

**VIA TELEFAX (918-599-8316)**

Jerry Williams
BALOGH CHERRY MITCHELL & WILLIAMS
324 S. Main, Suite 601
Tulsa, OK 74103-3682

Re:  Infringement of U.S. Patent No. 7,141,766
by X-Treme Bolting machine
Our File 4440.77530

Dear Mr. Williams:

I have not received a response from you with respect to my letter of August 20, 2007. It was believed, based on your silence, that your client had decided to stop marketing its X-TREME Bolting Machine. However, our clients' are aware that your client again appeared at the Power-Gen International Show, displaying and offering for sale this machine.

If you and your client truly believe that it is not infringing any of the claims of U.S. Patent No. 7,141,766, then you must provide us with a full explanation of your position, along with photographs, drawings and a full description of your client's device to support that position.

Without receiving such a complete explanation from you we will be forced to conclude that you agree that the '766 patent is infringed by your client's device.



EXHIBIT

February 1, 2008
Page 2

I look forward to receiving a prompt reply from you.

Very truly yours,

GREER, BURNS & CRAIN, LTD.

By   Kevin W. Guynn

KWG:tk

```
          ********************
          ***  TX REPORT  ***
          ********************


  TRANSMISSION OK

  TX/RX NO              4634
  RECIPIENT ADDRESS     919185998316p444077530
  DESTINATION ID
  ST. TIME              02/01 16:56
  TIME USE              01'03
  PAGES SENT               3
  RESULT                OK
```

Suite 2500
300 South Wacker Drive
Chicago, Illinois 60606
Telephone (312) 360-0080
Facsimile (312) 360-9315

# GREER, BURNS & CRAIN, LTD.

## Facsimile Cover Sheet

| To: | Jerry Williams | From: | Kevin W. Guynn |
|---|---|---|---|
| Fax: | 918-599-8316 | 8-20-2007 | Infringement by X-Treme Bolting Machine |
| Your Ref: | | Our Ref: | 4440.77530 |

Pages (including cover sheet) 3     Original Will ☐     Will Not ☒ Follow

☐ Urgent          ☐ For Review          ☐ Please Reply

IF THIS FACSIMILE IS RECEIVED INCOMPLETE, PLEASE CONTACT Tina Kiselka AT (312) 360-0080.

08CV3611
JUDGE MANNING
MAGISTRATE JUDGE BROWN

PH

P

# GREER, BURNS & CRAIN, LTD.

*Attorneys at Law*

300 SOUTH WACKER DRIVE
SUITE 2500
CHICAGO, ILLINOIS 60606-6771
TELEPHONE (312) 360-0080
FACSIMILE (312) 360-9315

www.GBCLAW.NET

WRITER'S DIRECT DIAL
312-967-2917
WRITER'S E-MAIL ADDRESS
KGUYNN@GBC.NET

ROGER D. GREER
PATRICK G. BURNS
LAWRENCE J. CRAIN
STEVEN P. FALLON
PAUL G. JUETTNER
JAMES K. FOLKER
B. JOE KIM
THOMAS R. FITZSIMONS
CAROLE A. MICKELSON
KEVIN W. GUYNN

ARIK B. RANSON
JOSEPH P. FOX
LAURA R. WANEK
REBECCA L. PUMPHREY
CHRISTOPHER J. McGEEHAN
CHRISTOPHER S. HERMANSON
ANUJ K. WADHWA

OF COUNSEL:
THOMAS R. JUETTNER*
JOHN W. CHESTNUT
PHILIP M. KOLEHMAINEN

*ADMITTED IN CALIFORNIA AND ILLINOIS

February 1, 2008

<u>VIA TELEFAX  (918-599-8316)</u>

Jerry Williams
BALOGH CHERRY MITCHELL & WILLIAMS
324 S. Main, Suite 601
Tulsa, OK 74103-3682

> Re:   Infringement of U.S. Patent No. 7,141,766
>       by X-Treme Bolting machine
>       Our File 4440.77530

Dear Mr. Williams:

I have not received a response from you with respect to my letter of August 20, 2007. It was believed, based on your silence, that your client had decided to stop marketing its **X-TREME** Bolting Machine. However, our clients' are aware that your client again appeared at the Power-Gen International Show, displaying and offering for sale this machine.

If you and your client truly believe that it is not infringing any of the claims of U.S. Patent No. 7,141,766, then you must provide us with a full explanation of your position, along with photographs, drawings and a full description of your client's device to support that position.

Without receiving such a complete explanation from you we will be forced to conclude that you agree that the '766 patent is infringed by your client's device.

2-4-08  To: Kevin
        From: Jerry

        You would Be Incorre...



EXHIBIT
P